IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-00033-01-CR-W-FJG |
| ) | |
| GEORGE L. GORDON, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant Gordon's Motion to Suppress Evidence. For the reasons set forth below, it is recommended that this motion be denied.

I. INTRODUCTION

On January 23, 2007, the Grand Jury returned a one count indictment against defendant George L. Gordon. The indictment charges that on November 23, 2006, defendant, having been convicted of crimes punishable by imprisonment for terms exceeding one year, knowingly possessed a .357 caliber revolver.

On September 12, 2007, the undersigned conducted an evidentiary hearing on the motion to suppress. Defendant Gordon was represented by Susan M. Hunt. The Government was represented by Assistant United States Attorney Stefan C. Hughes. The Government called Officer Shannon Marsh of the Kansas City, Missouri Police Department as a witness. The defense called no witnesses to testify.

II. FACTS

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the

following proposed findings of fact:

1. On November 23, 2006, at approximately 3:29 a.m., Officer Shannon Marsh was patrolling in a marked police car in the vicinity of 37th and Broadway in Kansas City, Missouri. (Tr. at 3) Officer Marsh observed a 1992 Lincoln Town Car, bearing license plate number 2AX-70R, stopped in a lane of traffic in the middle of the street. (Tr. at 4) A party who Officer Marsh recognized as Truman Brown,[1] a known drug dealer in 30 Sector, was leaning in the passenger side window of the Lincoln Town Car. (Tr. at 4 and 6) While Officer Marsh had never arrested Truman Brown, he had been arrested by other officers for drug-related offenses. (Tr. at 6, 29) Officer Marsh testified that he found it suspicious that Truman Brown was leaning into the passenger side window of the Lincoln Town Car while it was in the middle of the street at 3:29 in the morning. (Tr. at 6-7)

2. It is a violation of traffic law 70-521 to stop or park a vehicle in a lane of traffic where it is practicable to stop or park the vehicle on the side of the road. (Tr. at 4-5, 16-17; Government's Ex. 3) After observing this traffic violation, Officer Marsh turned his patrol vehicle around on Broadway and followed the Lincoln Town Car. (Tr. at 5, 7) Officer Marsh observed the Lincoln Town Car fail to come to a complete stop at the stop signs at Wyandotte and Baltimore. (Tr. at 7-8) Officer Marsh testified that this violation is known as a "rolling stop." (Tr. at 8)

3. The area in which Officer Marsh observed the traffic violation had been designated as a "C-Star area." (Tr. at 5) The boundaries of the "C-Star area" were Linwood on the north to 39th on the south and from State Line on the west to Main on the east. (Tr. at 5-6) Each month a new area is designated as the current "C-Star area" based on the level of crime and the calls for service. (Tr. at 5) Officers are to go into the "C-Star area" when they have down time, that is when they are not answering calls, and treat the area as a no tolerance area. (Tr. at 5) Officers are to stop all vehicles for traffic violations, identify who is in the vehicles and make any necessary reports. (Tr. at 5)

4. Officer Marsh asked dispatch to run the plates on the Lincoln Town Car. (Tr. at 8-9) However, Officer Marsh mistakenly transposed the numbers on the license plate and asked dispatch to run plate 2AX-07R, rather than 2AX-70R. (Tr. at 9) The license plate came back to a different vehicle. (Tr. at 9) Officer Marsh did not realize he had made the mistake until he met with Government counsel a couple of weeks ago. (Tr. at 9, 23-24) Officer Marsh testified that he would have stopped the vehicle even if the plates had come back as matching the Lincoln Town Car because the driver

---

[1] Officer Marsh and Officer Pritchard had responded to an earlier call at 37th and Broadway where they had talked to Truman Brown. (Tr. at 30) As the officers were leaving that call, they observed Truman Brown talking to the individual in the Lincoln Town Car. (Tr. at 30)

had committed traffic violations in the "C-Star area." (Tr. at 24)

5. Officer Marsh activated his red lights and siren. (Tr. at 9) The Lincoln Town Car was in the intersection of 36th and Main when Officer Marsh activated his lights and siren. (Tr. at 9-10) Just to the north of 36th and Main, the Lincoln Town Car's trunk popped open as it came to a stop in the lane of traffic again. (Tr. at 10) Officer Marsh felt uncomfortable and suspicious when the trunk popped open and the vehicle did not pull over. (Tr. at 10-11) The Lincoln Town Car turned left into the Poncho's parking lot. (Tr. at 11) Officer Marsh could not see inside the vehicle with the trunk popped open. (Tr. at 11) The Lincoln Town Car continued to roll slowly in the parking lot, until it finally came to a complete stop. (Tr. at 12)

6. Officer Pritchard, who had been patrolling in a separate police car, assisted Officer Marsh with the stop. (Tr. at 12) Officer Pritchard yelled at the driver of the Lincoln Town Car that he needed to exit the vehicle. (Tr. at 13) The driver did not immediately comply with this directive. (Tr. at 13) Officer Marsh testified that it makes officers suspicious when a person does not exit a vehicle after officers have ordered him to get out a couple of times. (Tr. at 13) The officers had their weapons drawn. (Tr. at 13) Officer Pritchard opened the door to the vehicle. (Tr. at 43-44) When the driver finally exited the vehicle, he was placed into handcuffs for officer safety. (Tr. at 13)

7. Officer Marsh asked the driver if he had any identification on him and the driver responded that he did. (Tr. at 14) The name on the identification was George Gordon. (Tr. at 14) Officer Marsh relayed the name to dispatch and dispatch came back and stated that Gordon had a Clay County failure to appear warrant. (Tr. at 14) Officer Marsh ordered a wagon because Gordon was going to go to jail for his warrant. (Tr. at 14)

8. The officers asked defendant Gordon, do you mind if we search your vehicle, and he replied no. (Tr. at 15) A little later on, Gordon changed his mind and revoked his consent. (Tr. at 15) In any event, the vehicle was searched after the officers learned that Gordon had an outstanding warrant. (Tr. at 15) The search was done incident to Gordon's arrest and as an inventory search because the vehicle was going to be towed.[2] (Tr. at 15-16) The inventory search was executed consistent with standard operating procedure. (Tr. at 15) The officers found a loaded revolver in the unlocked glove box. (Tr. at 15; Government's Ex. 6)

9. Officer Marsh did not issue any tickets to defendant Gordon for the "rolling stop"

---

[2]The vehicle was going to be towed because defendant Gordon was under arrest and there was no one else present to whom the officers could release the vehicle. (Tr. at 48) The officers could not just leave the vehicle as it was parked in a private parking lot. (Tr. at 48-49)

3

> violations on 37th Street or the standing in the lane violation. (Tr. at 23) Officer Marsh did not issue any tickets because a "felon in possession" is considered a state arrest. (Tr. at 23) Officer Marsh testified that on a state arrest, the officers arrest the subject and write a report while the detectives issue the tickets at a later date. (Tr. at 23) In essence, defendant Gordon's felon in possession charge trumped the traffic violations. (Tr. at 23)

10. At some point, Officer Pritchard ran the vehicle identification number on the Lincoln Town Car and it came back to George Gordon. (Tr. at 38)

11. During the stop, the officers asked defendant Gordon who he was talking to and Gordon replied, Truman Brown. (Tr. at 46) Officer Pritchard asked Gordon how he knew Truman Brown. (Tr. at 46) Gordon was not given <u>Miranda</u> rights by Officer Marsh or Officer Pritchard. (Tr. at 46)

### III. <u>DISCUSSION</u>

Defendant Gordon seeks to suppress all evidence and testimony concerning items recovered from a search of the 1992 Lincoln, all evidence seized pursuant to the search of defendant's person and any written or oral statements that may have been taken from defendant on or after November 23, 2006, on the basis that such evidence was obtained in violation of his rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. (Motion to Suppress Evidence at 1) Specifically, defendant contends that but for Officer Marsh's mistake in transposing the numbers on defendant's license plate thereby causing dispatch to report that the plate did not match the 1992 Lincoln, there was no probable cause to stop defendant's vehicle. (<u>Id.</u> at 3) Therefore, all evidence must be suppressed as it was obtained in violation of the Fourth Amendment. (<u>Id.</u>) In the alternative, defendant argues that even if the initial stop was justified, "[b]ecause Officer Marsh took absolutely no steps to 'effectuate the purpose of the stop' and took not [sic] steps to 'employ the least intrusive means available to dispel' his suspicion that the 1992 Lincoln was stolen, the stop and search violated the Fourth Amendment." (<u>Id.</u> at 6)

There is no question that the stop of the vehicle was lawful in this case. As the Eighth

4

Circuit Court of Appeals has observed, "a traffic violation–however minor–creates probable cause to stop the driver of a vehicle." United States v. Lyons, 486 F.3d 367, 371 (8th Cir. 2007); United States v. Gregory, 302 F.3d 805, 809 (8th Cir. 2002), cert. denied, 538 U.S. 992 (2003); United States v. Foley, 206 F.3d 802, 805 (8th Cir. 2000). Prior to pulling the vehicle over, Officer Marsh observed defendant to be illegally stopped in a lane of traffic and further observed defendant fail to come to a complete stop at two stop signs. (See Fact Nos. 1 and 2, supra) These traffic violations provided probable cause to stop the vehicle. The fact that Officer Marsh believed that he had additional probable cause to stop the vehicle because of his mistake in transposing the numbers on the license plate does not negate the probable cause to stop the vehicle for the traffic violations.[3] Further, Officer Marsh testified that he would have stopped the vehicle even if the plates had come back as matching the Lincoln Town Car because the driver had committed traffic violations in the "C-Star area." (See Fact No. 4, supra)

Following defendant Gordon's stop for traffic violations, Officer Marsh contacted dispatch with Gordon's name and was advised that Gordon had a warrant out of Clay County. (See Fact No. 7, supra) "[T]he law has become well established that during a routine traffic stop, an officer may request a driver's license and ... run a computer check ...." United States v. Foreman, 369 F.3d 776, 781 (4th Cir. 2004). After placing defendant Gordon under arrest for the outstanding warrant, the officers conducted a search of Gordon's vehicle. (See Fact No. 8, supra) The search of the vehicle

---

[3]Defendant Gordon's alternative argument that because Officer Marsh took no steps to determine if in fact the vehicle was stolen until well after Gordon's arrest and the search of his vehicle, the stop and search violated the Fourth Amendment, must also fail. Defendant assumes that Officer Marsh's only justification in stopping defendant was a belief that the 1992 Lincoln was stolen. As set forth above, defendant's traffic violations provided probable cause to stop the vehicle. Defendant's subsequent arrest on an outstanding warrant provided justification for the search of the vehicle.

5

was justified as a search incident to arrest. See New York v. Belton, 453 U.S. 454, 460 (1981)("we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile"); United States v. Searcy, 181 F.3d 975, 979 (8th Cir. 1999); United States v. Williams, 165 F.3d 1193, 1195 (8th Cir. 1999).

In addition, a warrantless inventory search of a vehicle is valid if it is conducted pursuant to standardized police procedures and not done in bad faith or for the sole purpose of investigation. See Colorado v. Bertine, 479 U.S. 367, 372 (1987). Inventory searches are used to protect the owner's property while the vehicle is in custody and to protect the police from disputes over lost or stolen property. See United States v. Martin, 982 F.2d 1236, 1240 (8th Cir. 1993). The standard for determining the validity of a warrantless search is whether the search was reasonable under all the circumstances. See United States v. Mays, 982 F.2d 319, 321 (8th Cir.), cert. denied, 507 U.S. 1023 (1993).

When dispatch advised Officer Marsh that defendant Gordon had a Clay County failure to appear warrant, Gordon was placed under arrest. (See Fact No. 7, supra) The officers decided to have Gordon's vehicle towed because Gordon was the lone occupant of the vehicle and it could not be left parked in a private parking lot. (See Fact No. 8, n.2, supra) Officer Marsh testified that the inventory search was executed consistent with standard operating procedure. (See Fact No. 8, supra)

Given these facts, the Court finds that the inventory search was conducted pursuant to standardized police procedures and that it was not done in bad faith or for the sole purpose of investigation. If the revolver had not been discovered pursuant to the search done incident to arrest, it would inevitably have been discovered during the inventory search.

## IV. CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Gordon's Motion to Suppress Evidence (doc #29).

Counsel are reminded they have ten days in which to file any objections to this Report and Recommendation. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

*/s/ Sarah W. Hays*
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE